## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES KUDRAKO,** | : | |
| | : | **Civil No. 3:14-CV-618** |
| **Plaintiff** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **RICHARD LEE, Administrator** | : | |
| **at Highland Manor Nursing** | : | |
| **Home, Inc.** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

In its current form this case presents a singular set of circumstances. The *pro se* plaintiff filed a complaint on April 1, 2014, but has taken no further action to litigate this case since that time. Thus, the plaintiff has not responded to a motion to dismiss, filed by the defendants in August 2014. (Doc. 8.) The plaintiff has also failed to comply with a September 2014 order of this Court directing a response to this motion. (Doc. 11.) Indeed, the only communication which we have received from the plaintiff since he began this lawsuit in April 2014 was a telephone call from the plaintiff on August 26, 2014, to the clerk's office reporting that he was in poor health and would not "respond[] to his case at this time, [but would] notify us in writing when he can." (Docket notation, 8/26/2014.)

While we are sympathetic to any health challenges confronting the plaintiff, it simply is not feasible to allow litigation to remain on some sort of unilateral and indefinite hold until such time as the plaintiff feels up to pursuing this lawsuit further. Therefore, on the unique circumstances of this case, it is recommended that the defendant's motion to dismiss be granted.

This *pro se* civil rights action was initially brought by the plaintiff through the filing of a complaint on April 1, 2014. (Doc. 1.)  As a *pro se* litigant the plaintiff was advised by this Court at this outset of this lawsuit of his responsibilities in this litigation.  Thus, on April 2, 2014, the District Court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion.  The motion may therefore be granted if:  (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 2, p.3.)

On August 1, 2014, the defendants filed a motion to dismiss in this case.  (Doc. 8.)  This motion noted that Kudrako had already litigated these claims relating to his

discharge from a nursing home, and described the history of this prior litigation, explaining that Kudrako was a resident at the Highland Manor facility on April 1, 2012, and had resided at the facility for many months prior to this time.  On April 1, 2012, Kudrako engaged in conduct with the facility staff that led to his arrest for assault and disorderly conduct in July 2012.  (Doc. 8 Ex. A.)  Ultimately, Kudrako pleaded guilty to a state charge as a result of this incident.  (Id.)

Following this episode, on April 2, 2012, Kudrako was discharged from the Highland Manor facility to his home.  As is his right under the law, Kudrako filed an appeal of this discharge with the Pennsylvania Department of Public Welfare Bureau of Hearing and Appeals on or about April 4, 2012.  This appeal was adjudicated by Judge Kevin R. Klinker, who reviewed exhibits from the facility concerning the discharge, along with hearing testimony from defendant, Richard Lee, along with the facility Director of Social Services and the plaintiff.  (Doc 8. Ex. B.)  In this decision, Judge Klinker denied Kudrako's appeal and upheld the discharge finding no violations of state or federal regulations.  (Id.)  Judge Klinker found that Kudrako's conduct put the facility staff and residents at fear for their safety and health.  (Id.)  Judge Klinker further found that the discharge to Kudrako's home was not unsafe, noting that the facility had arranged for home health care for Kudrako, and that Kudrako had spent the majority of the four months prior to his discharge residing at this home.  (Id.)

This Order stated that Kudrako had thirty days from the date of the Order on November 29, 2012, in which to appeal the Order to the Pennsylvania Commonwealth Court. (Id.) However, Kudrako failed to abide by this court order and instead did not appeal the Order until January 17, 2013, when he filed to appeal the claim *in forma pauperis*. (Doc. 8, Ex. C.) The Commonwealth Court granted the request, and directed Kudrako to file his claim and perfect service of the appeal by February 25, 2013. (Id.) Once again, Kudrako failed to comply with this state court order and did not file the appropriate documents or perfect service until March 5, 2013. (Id.) The Commonwealth Court dismissed Kudrako's appeal on April 2, 2013, noting that Kudrako had failed to comply with the Court's January 23, 2013, Order, and that his appeal was untimely filed. (Id.)

It is against this backdrop of repeated procedural shortcoming by Kudrako in his state litigation that the defendants moved to dismiss this complaint. Presented with this motion to dismiss, which highlighted his past procedural defaults, Kudrako failed to respond to the motion, and instead simply called the clerk's office informing the clerk that he could not "respond[] to his case at this time, [but would] notify us in writing when he can." (Docket notation, 8/26/2014.)

We have heard nothing further from the plaintiff, and on September 24, 2014, we ordered Kudrako to respond to this motion on or before October 3, 2014. (Doc. 11.) That order also warned the plaintiff in clear and precise terms that: "a failure to

comply with this direction may result in the motion being deemed unopposed and granted." (Id., p. 2.)  Despite this explicit warning, the plaintiff has not responded to this motion and the time for responding has now passed.  Therefore, in the absence of any timely response by the plaintiff, we will deem this motion to be ripe for resolution.

For the reasons set forth below, we recommend that this motion to dismiss be granted.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to  motions and  provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  *Any party who fails to comply with this rule shall be deemed not to oppose such motion*.  Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.  A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement,

together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our

system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id.  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this motion to dismiss. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this dispositive motion.

## B.    Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain

factors, commonly referred to as <u>Poulis</u> factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." <u>Lopez v. Cousins</u>, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting <u>Briscoe v. Klem</u>, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the <u>Poulis</u> factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir.1992)." <u>Briscoe v. Klaus</u>,  538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263.  Moreover, recognizing the broad discretion

conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly

irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d

at 260-61 (some citations omitted).  Here, the plaintiff has failed to respond to a defense motion which highlights this earlier procedural failure.  The plaintiff has also failed to timely file pleadings, and has not complied with orders of the Court.  Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders."  Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the

rules or court orders, lesser sanctions may not be an effective alternative.  See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at

1373." Briscoe v. Klaus, 538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

### C.    The Plaintiff's Claims Fail on Their Merits

In this case, Kudrako's complaint recites few facts and consists of little more than the talismanic recital of the elements of a cause of action.  This will not do.  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court

should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the . . .  well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must then determine whether the facts alleged . . .  are sufficient to  show that the

plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, then, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct.  A complaint should also, in simple terms, identify when and where these events are alleged to have occurred.  This fundamental requirement is driven both by matters of

principle, and by pragmatic considerations.  As a matter of principle and practice, a

basic factual recital is essential in a complaint because it is simply impossible without

such averments to properly assign individual responsibility to a particular defendant

without some factual description of what has transpired.  Therefore, it is incumbent

upon a plaintiff to describe who he seeks to sue, and what these parties did that

violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the

duty of the court to dismiss his claims.  See, e.g., Moss v. United States, 329 F. App'x

335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical

Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir.

2005)(dismissing complaint where "complaint fails to clearly identify which parties

[the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006

WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately

50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police,

CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible

complaint).  Further, in order to satisfy the strictures of Rule 8, a complaint must also

contain a coherent prayer for relief, demanding relief from a defendant that lies within

the power of the defendant to provide.  See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-

278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief

compels dismissal); Snyder v. Snyder, 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan.

24, 2012) <u>report and recommendation adopted,</u> 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

These principles are applicable here, and compel the dismissal of this complaint since the complaint fails to allege well-pleaded facts describing what the various defendants did that is alleged to have violated the plaintiff's constitutional rights. The failure to allege this basic fact could leave "defendants having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011). It also frustrates any efforts to determine whether this pleading was timely filed within the statute of limitations, a matter of significance here since many of the terse averments made by Kudrako appear to involve conduct falling beyond the statute of limitations. Therefore ,Rule 8 compels dismissal of the complaint.

Furthermore, to the extent that Kudrako is bringing a civil rights action against private parties, nursing home care-givers, alleging unspecified constitutional infractions  it is well-established that 42 U.S.C. § 1983, the principal federal civil rights statute, does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States.

Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law.  The two essential elements of a § 1983 action are:  *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F.Supp. 409, 416 (M.D.Pa. 1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added).  Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendant was acting under color of law when that defendant allegedly violated the plaintiff's rights.  Therefore, to the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

Moreover, to the extent that Kudrako's claim is premised upon an alleged violation of the Americans with Disabilities Act, which provides that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132, federal law also plainly states that a resident may be discharged from a facility under various conditions, including when "the safety of individuals in the facility is endangered." 42 U.S.C. § 1396r(c)(2)(A)(iii). Kudrako's state guilty plea conviction arising out of his disruptive and threatening behavior at this facility reveals that he presented just such a threat to others. Therefore, under federal law, nursing home officials were justified in seeking to discharge Kudrako.

Further, to the extent that Kudrako wishes to bring a civil rights action which is some way challenges the outcome of this state criminal case, a conviction which seems to justify his removal from this facility, he may not do so. Quite the contrary, it is well-settled that an essential element of a civil rights claim arising out of a criminal case is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation

between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483(quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)).  The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct.  In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484.  Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction.  Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

Thus, "our precedents are clear that § 1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment, but are entitled to relief only if they are innocent of the crime for which they were prosecuted.  Hector v. Watt, 235 F.3d 154, 156 (3d Cir.2000)." Washington v. Hanshaw, 13-1116, 2014 WL 67887 (3d Cir. Jan. 9, 2014)  Therefore, "a plaintiff claiming malicious prosecution must prove *actual* innocence as an element of his *prima facie* case." Steele v. City of Erie, 113 F. App'x 456, 459 (3d Cir. 2004). In this case it is evident that Kudrako's prior state criminal prosecution did not terminate favorably for him, since he was convicted in this state case.  Since "one

requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor." id., the immutable fact of Kudrako's guilty plea conviction presently defeats any federal civil rights claims based upon false arrest or malicious prosecution in this state case, and compels dismissal of these claims.  In short, to the extent that this complaint is based upon the fundamentally flawed legal premise that Kudrako can sue for acts arising out of a criminal prosecution even though he stands convicted on his own guilty plea of the crimes charged against him. Since this premise is simply incorrect, this complaint fails as a matter of law.

Finally, this latest complaint appears, in large measure,  to attempt to re-litigate a matter which has previously been conclusively resolved by the state courts, the lawfulness of Kudrako's discharge from this facility.  In conducting an assessment of this aspect of the complaint:  " We have the authority to apply the doctrine of claim preclusion or *res judicata sua sponte*. Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); Ezekoye v. Ocwen Federal Bank FSB, 179 F.App'x 111, 114 (3d Cir.2006) (non precedential). [and] can . . .  invoke *res judicata* 'if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' Gleash, 308 F.3d at 760." Guider v. Mauer, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009).

In our view, upon a review of this lawsuit, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to the past state litigation of his removal from this facility.   Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation.   It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now  . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....'  Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.'  Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)."   Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated.  "The prerequisites for the application of issue preclusion are satisfied when:  '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior

judgment.' "  Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27.  Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary.  See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329.  For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action.  See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007).  Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated.  Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997).  This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law.  See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made in the instant complaint concerning the outcome of Kudrako's prior state case, the legal requisites for issue preclusion are fully satisfied, since:  " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' "  Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore, these claims should be dismissed.

In sum, then, all of the Poulis factors favor dismissal of this action.  Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, the current complaint fails to state a viable cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims.  On these facts, we conclude that granting further leave to amend would be futile or result in undue

delay.   Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss (Doc. 8.), be GRANTED and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of October, 2014.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge